*W. A. Kinney* and *C. Brown*, for respondent.

---

# REPUBLIC OF HAWAII *vs.* OISHI, SUGINAGA, UEDA, ODA, EGAMI, MATSUMOTO, KOBIASHI (all Japanese); and JOHN GASPAR, Accessory before the fact.

## EXCEPTIONS.

HEARING, DECEMBER 27, 1894. DECISION, FEBRUARY 1, 1895.

JUDD, C.J., BICKERTON, J., AND COOPER, CIRCUIT JUDGE, IN PLACE OF MR. JUSTICE FREAR, ABSENT FROM ILLNESS.

(1) A defendant was committed for trial for instigating others to commit an offense. The Attorney-General declined to indict him on this charge and he was discharged from custody and again arrested, committed, indicted, tried and convicted on the charge of being an accessory before the fact to the commission of the said offense. Held, that the former proceedings were no bar to the conviction and there was no "mistrial."

(2) A person exercising the functions of a district magistrate is a *de facto* magistrate and a *de jure* magistrate to all parties except the State. Where a warrant issuing from a district magistrate is offered in evidence it is not necessary to prove its legality that the commission of the magistrate be produced. Circuit courts can take judicial knowledge of the appointment of the inferior magistrates.

(3) Reference was made in the body of a warrant, for the names of all but one of the parties to be arrested, to the information which preceded the warrant on the same paper, and contained the names of the parties complained against. Held, the warrant complied with the statute.

(4) Extreme strictness is not required in writing in English a Chinese or Japanese name. " Ois " as pronounced by a Hawaiian would be *idem sonans* with " Oishi."

(5) Where the evidence shows that a person incited others to assault police officers generally if they came for a certain purpose, the person inciting is responsible even though the officers were armed with legal warrants.

(6) To hold a person guilty of inciting another to commit an offense it is not necessary to show that he exercised so great an influence over him as to deprive him of the freedom of his will.

(7) In order to distinguish between certain defendants and an accessory before the fact tried with them, a separate verdict against these defendants was rendered, finding them "guilty of the charge of resisting the officers." Held good. The verdict if free from uncertainty, is good though it does not contain the particulars of the indictment in describing the offense.

OPINION OF THE COURT, BY JUDD, C.J.

On the 3d of September, 1894, at Keei, South Kona, Hawaii, two parties, John Gaspar and D. H. Kahaulelio, claimed adversely to each other certain coffee still unharvested; the former sent his men to gather it. The latter with his friends warned them not to take it and, they persisting, swore out warrants of arrest against all the above named defendants and others for larceny of said coffee. The execution of the warrants was resisted ; a fracas ensued in which one officer, Kailihiwa, was severely injured and a Japanese was shot and killed.

All the above named Japanese defendants were charged in the District Court of South Kona with the offense of assault and battery on certain police officers with intent to resist, hinder

and obstruct them in the discharge of their duty as such officers. They were committed for trial. John Gaspar was examined and committed for the offense of instigating the said Japanese to commit the said offense.

The Circuit Court, Third Circuit, sat at North Kohala on the 3d October last and was adjourned to the 9th. The Attorney-General at Kohala declined to indict or prosecute John Gaspar on the charge upon which he was committed, and the Circuit Judge presiding ordered his discharge from custody. Gaspar was immediately rearrested upon warrant of the District Court of North Kohala, on a charge of being accessory before the fact to the offense of assault and battery by the said Japanese upon public officers with intent to resist them in the exercise of their duty. Gaspar waived examination and was duly committed for trial at the Circuit Court then sitting. The above mentioned Japanese were indicted for the aforesaid assault and battery together with Gaspar as an accessory before the fact. Gaspar demurred to the indictment and also filed a " plea in bar," setting out the previous arraignment and committal and claiming that the declination to prosecute upon it, followed by discharge, was an acquittal therefrom, the two offenses being identical in law and fact. Both these pleas being overruled the Japanese defendants then pleaded not guilty. Gaspar refusing to plead the court ordered the plea of not guilty to be entered for him. This is statutory and this course was approved by this court in Herring's case, page 181 *ante.* The trial result-ed in a conviction.

We observe, in considering Gaspar's plea, that the statute, Compiled Laws pp. 338–9, authorizes the Attorney-General to grant a certificate that he declines to prosecute any person committed for trial, addressed to the Judges of the Supreme Court or any one of them, who shall order the discharge by warrant to the marshal or jailor who has the person in custody. The Attorney-General followed this course and the Circuit Judge signed the warrant of discharge. It would seem as if this enactment was only intended to apply to

prisoners before indictment and not necessarily during term. The power is distinctly given to the Attorney-General to decline to present an indictment. The warrant of the judge would follow as a matter of course, the duty being mandatory and not discretionary. The law has not been amended so as to give this authority to Circuit Judges who now preside at jury trials—but, granting that the Circuit Judge had no statutory authority to sign the warrant of discharge, the declination of the Attorney-General to present an indictment still stands. We consider that it has the same effect as a *nolle prosequi* entered after indictment with the consent of court. We must remember that the failure to prosecute or a *nolle prosequi* is not an acquittal. It was so held in *Rex vs. Manner*, 3 Haw. 339.

The proceedings on the second charge against Gaspar appear to be regular. He was re-arrested by warrant of the District Magistrate of North Kohala, who had jurisdiction, upon the sworn information of the Attorney-General. He waived examination and was committed upon the charge made. This is the usual course and it has been followed for years in a case where the facts being essentially the same the prosecuting officer desires to change the form of the charge. This is a far better course to pursue than to present an indictment for a different offense than that upon which the defendant was originally charged and committed. We doubt if this latter course could be legally followed. The original offense charged against Gaspar was "instigating the Japanese to commit assault and battery on the officers," etc. But Section 7, Chap. 44, Penal Code, prescribes that "the instigation is merged in the offense committed in pursuance thereof, when the offense is committed in such a manner that the instigator is guilty thereof, by reason of his being an accessory before the fact or otherwise." In our case the facts in the knowledge of the prosecution were that the offense of assault and battery on the officers had been committed in pursuance of Gaspar's instigation and that Gaspar was not present when the assault and battery was com-

mitted. He, therefore, was an accessory before the fact, in accordance with the definition given in Chap. 5, Penal Code, Sec. 2.

But suppose the proceedings of the Attorney-General and the Circuit Judge on the original charge were ineffectual to properly dispose of the same, we cannot see how the pendency of another charge against the defendant constitutes a bar to a subsequent charge and indictment, the regularity of which is not called in question. In no sense can the trial of Gaspar as an accessory before the fact be considered a "mistrial" on account of alleged irregularities preceding the same.

We overrule this exception.

Although the Japanese defendants and John Gaspar were tried jointly, they were represented by different counsel and the Circuit Judge allowed two bills of exceptions. We shall consider the several points made in both bills, treating them as one. At the trial two papers were offered in evidence purporting to be the warrants for the arrest of defendants and others, under which the officers were acting at the time of the assault. They were objected to until proven to have been issued by the District Magistrate of South Kona on the 3d September, 1894, and that he was regularly commissioned and legally acting on that date. The presiding judge said that "he had official knowledge that Thos. H. Wright was commissioned as District Magistrate of South Kona on the 1st September, 1894, for two years." The warrants were admitted in evidence. Further objections were made to them. The warrants were signed "Thos. H. Wright, District Magistrate of South Kona, Island of Hawaii." They were on the printed form furnished by the Judiciary Department to the magistrates and follow on the same page the sworn information upon which the warrants issue. The informations are signed by D. H. Kahaulelio, and bear the statement, "Signed and sworn to before me this 3d day of September, 1894. T. H. Wright, District Magistrate of South Kona, Island of Hawaii."

We find from the evidence (transcript, pp. 101, 125 and 126) that Mr. Wright was exercising the functions of District Magistrate of South Kona at the time of his signing the warrants. A judge *de facto* is a judge *de jure* to all parties except the State.

Wharton's Crim. Ev., Sec. 164.

*Coyle vs. Commonwealth*, 104 Pa. State, 117.

*Walcott vs. Wells*, 24 Pac. R., 367 (Nevada).

It was not necessary that Mr. Wright's commission should be produced. *State vs. Roberts*, 52 N. H. 492, 1 Gr. Ev., Sec. 92. Moreover, the presiding judge's statement, that he took judicial knowledge of the fact was sufficient, and it was not essential that he should take the stand and recite under oath the facts from which this knowledge was derived.

*State vs. Wright*, 16 R. I., 518.

*Hancock vs. Town of Worcester*, 16 Vt., 106.

*Graham vs. Anderson*, 42 Ill., 515.

We find nothing to modify these rules of law in the fact that by the Constitution of the Republic of Hawaii all commissions were vacated on the 1st September, 1894. The presumption exists that the executive performed its duty and appointed a District Magistrate for South Kona on or before that date.

This exception is overruled.

Objection was made to the warrants on the ground that the names of the persons to be arrested were not repeated in the body of the warrants, but were referred to as " A. B. et. al., charged with the offense of larceny in the third degree as fully set forth above, and when found to bring their bodies before the District Magistrate of South Kona," etc. As before stated, the warrants were preceded upon the same paper by the sworn information which named all the persons charged with the offense. Apparently there was not room in the printed form of the warrants for the insertion of all the names of the persons to be arrested, and we see no possible objection to referring in the warrants to the complaint for the rest of the names of the persons to be arrested.

In *Commonwealth vs. Dean*, 9 Gray, 284, C. J. Shaw said that " where a paper was annexed and definitely referred to it is to be treated as recited in and a part of the process or instrument in which it is recited." In that case the warrant referred to the "offense described in the annexed complaint."

The statute required that the warrant should recite the substance of the accusation. Rev. Stat. Mass. C. 135, Sec. 2.

So also *Com. vs. Dana*, 2 Met. 329. Here the articles to be seized on a search warrant were described as the things " mentioned in the above complaint."

*Donohue vs. Shed*, 8 Met. 326. The warrant ordered the arrest of the party " mentioned in the above complaint." So also *State vs. Goyette*, 11 R. I., 502. We hold that the warrant sufficiently complied with the statute. Judiciary Act of 1892, Sec. 18.

One of the warrants which was in the Hawaiian language contained the name of " Ois." Oishi was one named in the indictment. A witness for the prosecution was asked to point out Oishi's name in the warrant, and he testified that Oishi in the indictment was the " Ois " in the warrant. This was objected to on the ground that parol testimony cannot vary or explain a written instrument. The witness testified that the Hawaiian rendering of " Oishi " was " Ois." We hold that it was competent as a matter of identification to show that these names represented one and the same person, and the rule of evidence above referred to was not thereby violated. To a Hawaiian they are *idem sonans*. A Hawaiian, unless educated in the English language, would add to a word ending with a consonant a vowel sound and " Ois " would be ordinarily pronounced " Ois<sup>i</sup>." As to the insertion of the " h " after the " s," an ordinary Hawaiian would not distinguish between the sound of " sh " and " s."

We do not hold anyone to extreme strictness in the paraphrasing or Anglicizing of names foreign to the English tongue, especially when a Hawaiian undertakes to write a Chinese or Japanese name, and whose unaccustomed ears are

not sensitive to the pronunciation of their names by the persons themselves. The point is untenable. See Herring's case, page 181 ante.

Moreover, Oishi plead not guilty to the indictment, and it makes no difference whether or not his name was in the warrant whose execution he was charged with resisting. The offense may be complete if he as a mere bystander resisted the officers while attempting to execute the warrant upon others. Having held the warrant to be good against all the persons named in the information, it is of no consequence, if some of them were there and the attempt was made to arrest these, whether some other persons named in the warrants were not present at the time of the attempted arrest.

The trial judge refused to charge at request of defendant Gaspar, " that there was no evidence of Gaspar's having advised or counseled or incited the defendant Japanese to resist the police officers named in the indictment, in the event of such officers being in the due and legal discharge of their official duties and while the officers should be so engaged."

It was proper to refuse this instruction because the evidence shows that the orders Gaspar gave to his Japanese were broad and made no exception whether the officers had warrants or not. He told them that if the kanaka policemen came in any of the coffee, "You beat them with stones and tie them up with rope to a tree," etc. (Transcript p. 5.) Evidence also went to the jury that after the first dispute about the coffee the prosecuting witness, D. H. Kahaulelio, left them saying he was going to get a warrant of arrest for them and so Gaspar must have inferred that the police would come later with warrants, (pp. 94, 97 and 273). Gaspar having given orders to assault the police he is responsible for the probable result of his orders.

The latter part of instruction No. 10 was refused. It reads—" And if said officers attempted to arrest any person for whom they had no warrant and who was not at the time

of such attempt to arrest him in the act of committing an offense, then such person so sought to be arrested by the officers or any of them without a warrant were justified in resisting such arrest." This instruction could not properly be given. The warrants were, as held by us, legal, and when two of those named therein, namely, Oishi and Matsumoto, resisted and those not named in the warrant joined in the attack on the officers they were liable to arrest without warrant for the new offense. See Caecires' case, (page 522 *ante*).

The last part of request No. 11 was refused. It is as follows—"Therefore if the law will not presume the responsibility of Gaspar for the illegal acts of others, done in his absence, and, in order to find him guilty under this indictment, the jury should be convinced, not only that Gaspar incited the defendant Japanese to assault the officers named in the indictment, while in the discharge of their official duties and that the Japanese defendants understood from his language that Gaspar was so inciting them; but also that Gaspar exercised a peculiar power and influence over the minds of the defendant Japanese, to a degree which deprived the persons so by him incited, of the freedom of their wills, and deprived them of the character of free moral agents; and so as to render each of them merely the instrument of Gaspar, in making the assault complained of."

The law does not require that in order to hold a person guilty of inciting another to do a criminal act he must have "hypnotized" him so that his own will is destroyed.

Wharton's Crim. Ev. Sec. 225, and notes.

There remains an exception to the verdict. The other points were either abandoned or have been discussed and decided in other portions of this case.

As to the verdicts. There were two, one in the case of the Japanese and the other in Gaspar's case. They were tried together, and there was no necessity for two verdicts.

One is as follows: "We the jury in the case of *Republic of Hawaii vs. John Gaspar*, find J. Gaspar guilty of the charge

of accessory before the fact as charged." The objection that the "J" being the initial to Gaspar's surname does not come below the line and therefore is "I" and not "J. Gaspar," is too puerile to be discussed further than to say that the foreman who wrote the verdict wrote "John" in the title of the case in the same way, not bringing the "J" below the line.

The other verdict is as follows: "We the jury in the case of the *Republic of Hawaii vs. seven Japanese*, find Oishi, Sugenaga, Ueda, Oda, Egame, Matsumota guilty of the charge of resisting the officers but recommend them to mercy. Kobiashi we find not guilty." There was no necessity for adding in the verdict after "guilty" the words "of the charge of resisting the officers," but we can readily understand that it was so written in order to distinguish the Japanese named from Gaspar who they found was the accessory before the fact. There was no uncertainty in the verdict; resisting the officers was the gist of the offense and it was not necessary to put all the particulars of the indictment in the verdict. The title of the case is no part of the verdict. The verdict enumerates the seven Japanese by name. It cannot be misunderstood, and it must stand.

We do not find warrant on a review of the whole evidence to order a new trial on the ground that the verdict is contrary to evidence and overrule the motion for this purpose.

The exceptions are overruled and new trial refused.

*Attorney-General W. O. Smith* and *Deputy A. G .M. Robertson*, for prosecution.

*P. Neumann, C. W. Ashford* and *A. S. Hartwell*, for defendants.